# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**DEAN A. GUSTAFSON, #194804,**

       **Petitioner,**

                     **Case No. 2:01-CV-73692**
                     **Honorable Victoria A. Roberts**

**v.**

**SHERRY L. BURT,**

       **Respondent.**

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Petitioner, Dean A. Gustafson, is a state inmate currently incarcerated at Chippewa Correctional Facility in Kincheloe, Michigan, where Greg McQuiggen is the warden. At the time Petitioner initially filed his request for habeas relief, he was incarcerated at Southern Michigan Correctional Facility in Jackson, Michigan where Sherry L. Burt was the warden.

On October 19, 1998, Petitioner was convicted of armed robbery, Mich. Comp. Laws §750.529, and possession of a firearm during the commission of a felony, Mich. Comp. Laws §750.227b. Petitioner was sentenced to twenty to sixty years for the armed robbery conviction along with a consecutive two year term for the felony firearm charge. He filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the Court DENIES the petition.

## I. BACKGROUND

Petitioner was tried in Oceana County, Michigan. On September 11, 1998, a circuit court jury found Petitioner guilty of the above stated offenses. The convictions arose from the armed

robbery of The Concession Stand Market on November 30, 1997 in the Village of Shelby in Oceana County.

Petitioner raised the following three issues on direct appeal:

I. [Petitioner] was deprived of effective assistance of counsel as guaranteed by the United States Constitution due to defense counsel's failure to file several motions to suppress and conduct a proper investigation in order to present a defense for his client.

II. The trial court committed reversible error in scoring OV 2 at 25 points where the facts did not support such a scoring and thereby sentenced [Petitioner] to a disproportionate and illegal sentence.

III. There was insufficient evidence to convict [Petitioner] of armed robbery.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Gustafson*, No: 215546, 2000 WL 33421437 (Mich. Ct. App. May 5, 2000). Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court raising the same issues; relief was denied. *People v. Gustafson,* 463 Mich. 920; 619 N.W.2d 546 (Table). Petitioner also filed a motion for remand which was denied the same order. *Id.*

On September 28, 2001, Petitioner filed a habeas petition with this Court, but simultaneously filed a motion to stay proceedings so he could return to the state courts and exhaust additional state court remedies. On April 17, 2002, the Court denied Petitioner's motion to stay, but dismissed the matter without prejudice providing Petitioner the opportunity to move to reopen his federal habeas corpus petition within 60 days of exhausting his state court remedies.

On May 3, 2002, Petitioner filed several motions including a motion for relief from judgment, which raised the following issues:

"I. [Petitioner] was denied his Sixth Amendment right to effective assistance of trial counsel where counsel sat idly during the prosecution's opening statement and failed to put the prosecution's argument to adversarial testing, failing to give the jury a

defense opening argument, in violation of the United States Constitution, Am VI.

II. [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to investigate and obtain his co-defendants' criminal histories, and impeach the witnesses with those histories. U.S. Const. Ams.VI, XIV; Mich. Const. 1963, Art 1, §§17, 20.

III. [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel as guaranteed by the United States Constitution where counsel failed to obtain and call expert witnesses in police identification procedures, police crime scene procedures, and forensic evidence collection and examination, thus denying [Petitioner] his due process rights to a fair trial. U.S. Const. Ams.VI, XIV; Mich. Const. 1963, Art 1, §§17, 20.

IV. [Petitioner] was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to hire a private investigator, and failed to investigate the scene of the crime.

V. [Petitioner] was denied his due process right to a fair trial . . . when the results of a constitutionally improper and highly suggestive photographic identification procedure employed by the police was introduced at trial, and the identifying witness was allowed to make an in-court identification; and [Petitioner] was denied effective assistance of trial counsel where counsel failed to move to suppress the improper identification and testimony.

VI. Because the perpetrator's identity was the primary issue at trial, [Petitioner's] state and federal due process rights were violated where the police failed to preserve crucial evidence at the crime scene, which denied his access to potentially exculpatory information and evidence, and thus he was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to file a motion for dismissal.

VII. The prosecutor deprived [Petitioner] of his state and federal due process rights to a fair trial where he repeatedly engaged in prejudicial misconduct in violation of the U.S. Const. Ams. V, XIV; Mich. Const. 1963, Art 1, §§17, 20.

    B. The prosecutor knowingly and willingly presented false and perjured testimony;

    C. The prosecutor denied [Petitioner's] due process rights by appealing for sympathy for the robbery victim;

    D. The prosecutor violated [Petitioner's] due process rights by allowing co-

defendants to falsely testify to not expecting leniency and failing to reveal their sentencing agreements;

E. The prosecutor's pronounced and persistent misconduct requires reversal of [Petitioner's] convictions. If trial counsel waived appellate review of those instances of misconduct to which he did not object, then his failure to object deprived [Petitioner] of effective assistance of trial counsel.

VIII. The trial court abused its discretion, denying [Petitioner] his fundamental due process rights to a fair trial, by failing to sequester an investigative police officer during the testimonial state of the jury trial. U.S. Const. Ams. V, XIV; Mich. Const. 1963, Art 1, §§17, 20.

IX. [Petitioner] was denied his due process rights to a fair trial by the cumulative error committed at trial.

X. [Petitioner] is entitled to relief from judgment where he has clearly demonstrated good cause, actual prejudice, a miscarriage of justice and actual innocence."

The trial court denied Petitioner's motion for relief from judgment on July 17, 2002. Petitioner filed a motion for reconsideration which was also denied. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals; it was denied. *People v. Gustafson,* No. 249723 (Mich. Ct. App. March 11, 2004). Petitioner then filed an application for leave to appeal and motion to remand for an evidentiary hearing with the Michigan Supreme Court, both of which were denied. *People v. Gustafson,* 471 Mich. 944; 690 N.W.2d 108 (2004) (Table).

On March 8, 2005, the Petitioner filed a motion with this Court to reopen his habeas case as well as a new habeas petition to reflect his exhausted state court remedies. On April 5, 2005, the Court issued an order granting Petitioner's motion. Petitioner now seeks a writ of habeas corpus asserting the following claims:

"I. Petitioner was deprived of effective assistance of counsel as guaranteed by the United States Constitution due to defense counsel's failure to file several motions to suppress and conduct a proper investigation in order to present a defense for his client.

4

II. The trial court committed reversible error in scoring OV2 at 25 points where the facts did not support such a scoring and thereby sentenced Petitioner to a disproportionate and illegal sentence.

III. There was insufficient evidence to convict the Petitioner of robbery armed.

IV. Petitioner was denied his Sixth Amendment right to effective assistance of trial counsel, where counsel sat idle during the prosecution's opening argument and failed to put the prosecution's argument to adversarial testing - failing to give the jury a defense opening argument in violation of the U.S. Const, Am VI and due process rights to a fair trial. U.S. Const Am's V, XIV.

V. Petitioner Gustafson was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to investigate and obtain his co-defendant's criminal histories and impeach the witness with those histories.

VI. [Petitioner] Gustafson was denied his Sixth Amendment right to effective assistance of counsel as guaranteed by the United States Constitution, where counsel failed to obtain and call expert witnesses in police identification procedures, police crime scene procedures, and forensic evidence collection and examination, thus denying Mr. Gustafson of his due process rights to a fair trial, U.S. Const. AM's V, VI & XIV.

VII. Petitioner Gustafson was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to hire a private investigator and failed to investigate the scene of the crime.

VIII. Petitioner Gustafson was denied his due process right to a fair trial as guaranteed by the Fourteenth Amendment of the United States Constitution, when the results of a constitutionally improper and highly suggestive photographic identification procedure employed by the police was introduced at trial and the identifying witness was allowed to make an in-court identification; and Petitioner Gustafson was denied effective assistance of trial counsel, violating his Sixth Amendment rights, where counsel failed to move to suppress the improper identification and testimony.

IX. Petitioner's state and federal due process rights were violated where the police failed to preserve crucial evidence at the crime scene, which denied him access to the potentially exculpatory information and evidence, and thus he was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to file a motion for dismissal.

X. The prosecutor deprived Mr. Gustafson of his state and federal due process rights to a fair trial where he repeatedly engaged in prejudicial misconduct in violation of

U.S. Const. Am's V, XIV.

XI. The trial court abused its discretion, denying Petitioner Gustafson, his fundamental due process rights to a fair trial by failing to sequester an investigative police officer. U.S. Const. Am's. V, XIV.

XII. Petitioner was denied his due process rights to a fair trial by the cumulative errors committed at trial.

XIII. Petitioner Gustafson is entitled to relief from judgment where he has clearly demonstrated good cause, actual prejudice and a miscarriage of justice and actual innocence."

Respondent filed an answer to the petition asserting exhaustion, statute of limitations, procedural default and other defenses.

## II. STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; the state court's application of federal law "must have been objectively unreasonable."  *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court explained the proper application of the "contrary to" clause:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases  . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court held a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case."  *Id.* at 409.

[A] federal habeas court making the "unreasonable application" inquiry should ask

whether the state court's application of clearly established federal law was objectively unreasonable . . .

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Davis v.Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel & Procedural Default

Petitioner claims that his trial attorney failed to: (1) file a motion to suppress the videotape from the Rothbury Wesco store and the testimony from two store employees; (2) conduct a proper investigation so that a proper defense could be presented to the jury; (3) file a motion to quash and/or suppress the identification by Sarah Sayers; (4) obtain and admit into evidence impeachment evidence in the form of cards and letters written by Wendy Kriesel to Petitioner while was incarcerated; (5) interview and subpoena doctors; and (6) create a testimonial record regarding an ineffective assistance of counsel claim. He also cites cumulative error by trial counsel. Petitioner raised these issues on direct appeal but the Michigan Court of Appeals rejected it:

Our review of the challenged evidence [identification evidence] reveals that it was both relevant and more probative than prejudicial . . ., and that therefore defense counsel need not have objected to its admission . . . (Defense counsel need not make frivolous or meritless motions). Moreover, evidence independent of that challenged by defendant, including the victim's testimony and the testimony of two charged accomplices, demonstrated that defendant committed the instant offenses. In light of the unchallenged evidence, we find no reasonable probability that defendant would have been acquitted had defense counsel sought suppression of the evidence

8

challenged by defendant on appeal.

With respect to defendant's several remaining allegations of defense counsel deficiencies, we conclude that they all involve matters of trial strategy that we will not second guess on appeal . . . Moreover, even were we to assume that defense counsel's alleged failures qualified as objectively unreasonable, given the substantial evidence of defendant's guilt presented at trial defendant has failed to demonstrate that these failures prejudiced him.

*People v. Gustafson,* 2000 WL 33421437, *1 (Mich. Ct. App. May 5, 2000) (internal citations omitted).

Petitioner claims other areas of ineffective assistance of counsel. He says counsel failed to: (1) object during the prosecution's opening statement and failed to give an opening statement; (2) investigate and obtain the criminal histories of Petitioner's co-defendants; (3) obtain and call expert witnesses to provide procedure testimony about police identification, crime scenes, and forensic evidence; (4) hire a private investigator and failed to investigate the crime scene; (5) move to suppress other improper identification testimony; and (6) file a dismissal motion. However, these ineffective assistance of counsel claims appear to be procedurally defaulted.

The last state court to issue a reasoned opinion addressing the ineffective assistance of counsel claims, held that "the defendant failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Gustafson,* 471 Mich. 944; 690 N.W.2d 103 (Table). The Sixth Circuit held that denial of leave to appeal based on petitioner's failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a sufficient determination that the court's conclusion was based on procedural default. See *Burroughs v. Makowski,* 282 F.3d 410, 413-14 (6th Cir. 2002). Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues as to which it is applied. *Simpson v. Jones,* 238 F.399, 407 (6th Cir. 2000). Where "a state

prisoner defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Petitioner's ineffective assistance of counsel claims, are therefore in part, procedurally defaulted.

However, the Court, however, need not address the procedural default issue. While the procedural default doctrine precludes habeas relief on a defaulted claim, this procedural default doctrine is not jurisdictional. *Trest v. Cain,* 522 U.S. 87, 89 (1997); *Howard v. Bouchard,* 405 F.3d 459, 476 (6th Cir. 2005). Thus, while the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir. 1999)(internal citations omitted); see also *Lambrix v. Singletary,* 520 U.S. 518, 524-25 (1997); *Ferensic v. Birkett,* 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). The Court deems it more efficient to proceed directly to the merits of Petitioner's claims.[1]

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test to determine whether a habeas petitioner received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. at 687. Second, the

---

[1]Claims D - G, *infra* are unrelated to Petitioner's ineffective assistance of counsel claims, but are likewise procedurally defaulted. For the same reasons cited above, the Court will also address the merits of those issues.

petitioner must establish that the deficient performance prejudiced the defense. *Id.* Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*.

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

### 1. Failure to Suppress Identification Evidence

Petitioner says his attorney was ineffective because he failed to file suppression motions to

preclude the admissibility of certain photographs, a videotape and witness testimony which served to identify Petitioner as the armed robber in this case.

### a. Suggestive Line-up

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the

defendant] was denied due process of law." *Stovall v. Denno,* 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384 (1968). A suggestive line-up or photo array alone, however, does not require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite,* 432 U.S. 98, 106 (1977). The key, however, is whether there was "a very substantial likelihood of irreparable misidentification." *Id.* at 116; *Simmons v. United States,* 390 U.S. 377, 384 (1968). Thus, the central question where the pre-trial identification procedure is impermissibly suggestive, is "whether under the 'totality of the circumstances' the identification was reliable even though the [ ] procedure was suggestive." *Neil v. Biggers,* 409 U.S. 188, 199 (1972).

Five factors relevant to this "totality of the circumstances " analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. The court engages in a balancing test, weighing the factors listed in *Neil v. Biggers, supra,* against the "corrupting effect of the suggestive identification itself." *Manson v. Brathwaite,* 432 U.S. at 114. Thus, a court must "follow[ ] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier,* 259 F.3d 503, 510 (6th Cir. 2001). First the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the

"identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera,* 922 F.2d 934, 973 (2d cir. 1990). Accordingly, there would be no basis upon which counsel would have to move to suppress such a pre-trial identification. If on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *United States v. Crozier*, 259 F.3d at 510. Reliability "is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. at 114.

Here, the victim, Sarah Sayers, who was the only employee working at the store The Concession Stand during the robbery, within a week of the robbery in December 2007, described the robber as an individual with light brown hair and no facial hair. Petitioner has dark hair and a pronounced thick mustache. A forensic sketch artist illustrated Ms. Sayers' description. Petitioner argues the sketch bore no resemblance to himself. Approximately four months later, in April 1998, Ms. Sayers was shown a videotape and still photos of Petitioner taken from a security camera from another store (the Rothbury Wesco store), located approximately 10 miles away from The Concession Stand.[2] Petitioner argues that Ms. Sayers formulated her identification of Petitioner as the robber from those still photos of the Petitioner.[3] Ms. Sayers' testimony at trial was that she was

---

[2]Petitioner and Christopher Williams, who testified against Petitioner at trial as committing the robbery, were in the Wesco store on the same evening of The Concession Stand robbery; and the security camera in the Wesco store recorded video footage of the two men browsing in the video section, but making no purchases.

[3]Although Petitioner and Christopher Williams were both in some of the photographs, Mr. Williams is an African American. Since, Ms. Sayers' description of the robber included the fact that he was Caucasian, by process of elimination, there was only one other individual in the photo who could have been Petitioner.

only "pretty positive" that Petitioner was the robber and that on a scale of one to ten, her certainty that Petitioner was the robber was a nine. (Tr. 9/10/98, at 135, 141).

The Court finds that the identification procedure was not impermissibly suggestive: (1) Ms. Sayers' description relative to Petitioner's coloring, build, height, and clothing that he wore (including a distinctive patch) at the time of the robbery had been consistent before and after she viewed any photographs; (2) Ms. Sayers was shown a photo array of six similarly looking individuals, including the Petitioner, and she picked Petitioner as the person who robbed The Concession Stand; (3) Sayers had a good opportunity to view the Petitioner since she was the only employee in the store, there were no other customers in the store who had her attention, and he entered the store without a mask (which was subsequently pulled over his face once the robbery began); (4) Ms. Sayers' degree of attention on the Petitioner was high; (5) her prior description of Petitioner has been consistent; and (6) Ms. Sayers' admitted that she was not one hundred percent certain that Petitioner was the individual who robbed The Concession Stand; she said she was "pretty positive." Ms. Sayers' identification is reliable; and Petitioner has not met his burden to show that she was subjected to unduly suggestive identification procedures.

Furthermore, the record indicates that although trial counsel did not seek to suppress the admission of the photographs and videotape, a trial strategy the attorney employed was his decision to cross-examine Ms. Sayers about the inaccuracies of her initial descriptions of the robber and how they did not correlate with the true depiction of Petitioner's appearance on the night of the robbery. (Tr. dated 9/10/98 at 129-140; 141-142). He further cross-examined Ms. Sayers' about the photographs which allegedly isolated Petitioner, about the four month delay between the robbery and when she identified Petitioner from a photo array, and the improbability of Petitioner holding

a gun in the hand stated by Ms. Sayers', since the elbow on that arm was injured. *Id.*

Moreover, the state appellate court determined that counsel was not ineffective for failing to file a motion to suppress because such evidence was relevant and more probative than prejudicial and properly admitted under Michigan law. *People v. Gustafson,* 2000 WL 33421437 at *1. Therefore, although the state court of appeals did not articulate an analysis of the above stated five factors, Petitioner fails to demonstrate that the ultimate state court decision was contrary to, or an unreasonable application of established Supreme Court precedent.

### i. Harmless Error

Even assuming that trial counsel's performance fell below the objective standard of reasonableness Petitioner was not prejudiced and the error was harmless.

It is not enough to show poor legal practice, "there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rompilla v. Beard,* 545 U.S. 374, 390 (2005), quoting, *Strickland v. Washington,* 466 U.S. at 694. In other words, the issue is whether there is a likelihood that counsel's arguably deficient performance caused a different result or undermined confidence in the outcome. *Rompilla v. Beard, supra* at 393. Under the harmless error rule any error must raise grave doubt about whether trial error had a substantial and injurious effect or influence on a jury verdict. *O'Neil v. McAnich,* 513 U.S. 432, 438-39 (1995); *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993). To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's verdict. *Mitzel v. Tate,* 267 F.3d 524, 534 (6th Cir. 2001). "While the burden of persuasion on harmless error review falls on a petitioner, he need not prove that the error was outcome-determinative; instead he must merely remove any

assurances that the error did not affect the outcome." *Ruimveld v. Birkett,* 404 F.3d 1006, 1014 (6th Cir. 2005); *Beck v. Haik,* 377 F.3d 624, 635 (6th Cir. 2004).

Suppression of the in-court identification by the victim and testimony on the photo array would not have been fatal to the state's case. Christopher Williams testified that he was with Petitioner on the night of the robbery in the back seat of the car outside of The Concession Stand waiting for him. (Tr. , dated 9/19/98 at 261-62). He further testified that Petitioner came running out of the store, took a mask off of his face and ordered Wendy Kriesel, Petitioner's girlfriend who was in the driver's seat, to "get the fuck[ ] out of here." *Id.* at 262. Mr. Williams also testified that Petitioner gave him $200.00 from what he had taken from The Concession Stand while in the car and told Mr. Williams, "I robbed the place." *Id.* at 262-63.

Wendy Kriesel testified at Petitioner's preliminary examination and at trial. She corroborated Mr. Williams' testimony . (PE Tr. dated 4/30/98 at 13-18, 23-24). She also testified that she saw Petitioner with a gun on the night of the robbery and before the incident. *Id.* at 16, 23. Ms. Kriesel testified that she and Petitioner has planned to marry Petitioner. *Id.* at 20. Finally, the videotape and

testimony from Kimberly Lonecki, a Wesco store employee, puts Petitioner within ten miles of The Concession Stand on the night of the robbery.

Because of the significant direct and circumstantial evidence of guilt elicited from these witnesses, the outcome would not have been affected. See *Williams v. Stewart,* 446 F.3d 1030, 1039 (9th Cir. 2006) (strong circumstantial evidence linking petitioner to crime scene rendered admission of pre-trial identification harmless); *Young v. Sherry*, No. 05-71480, 2006 WL 3386609 (E.D. Mich.

Nov. 21 2006)(unpublished) (any identification error was harmless where petitioner was caught near the crime scene soon after the robbery in a car resembling that seen fleeing the robbery with a mask and clothes matching the assailant).

### b. Right to Counsel

Petitioner claims that since the police conducted a photographic display with Ms. Sayers while Petitioner was in custody and without his counsel being present, Ms. Sayers' identification should have been suppressed, since it was obtained in violation of Petitioner's Sixth Amendment right to counsel.

It is irrelevant whether Petitioner was in custody at the time of the photographic line-up. Although the Sixth Amendment gives a criminal defendant the right to have counsel present at an in-person line-up after the initiation of criminal proceedings, there is no corresponding Sixth Amendment right to counsel during a photographic display. *United States v, Ash,* 413 U.S. 300, 321 (1973); *Mikel v. Thieret,* 887 F.2d 733, 737 (7th Cir. 1989). Thus, Petitioner had no federal constitutional right to counsel at the photographic array. Therefore, there would be no violation of federal law as determined by the U.S. Supreme Court; there is no federal law entitling Petitioner to

the presence of counsel under these circumstances, and in turn, no ineffective assistance of counsel claim on the identification.

### 2. Failure to Investigate

Petitioner argues his trial counsel was ineffective because he failed to conduct a proper investigation into the criminal backgrounds of Christopher Williams and Wendy Kriesel for impeachment purposes, and he failed to hire a private investigator for crime scene investigation.

Petitioner claims his alleged accomplices had criminal records and that "[t]he jury would have had reason to disbelieve [their] already questionable testimony." (Pet. at 32). With respect to the private investigator, Petitioner says a number of investigative tactics could have been employed which would have yielded more evidence of innocence for the jury to hear.

*Strickland* requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington,* 466 U.S. at 691. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up . . . " *Rompilla v. Beard,* 545 U.S. 374, 383 (2005). Attorneys do however, have a duty to make all reasonable efforts to learn what they can about a case. See *Id.* at 385. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilty or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his [or her] options and make a reasonable choice between them.'" *Id.* quoting *Horton v. Zant,* 941 F.2d 1449, 1462 (11 Cir. 1991). Stated differently, "[i]t is not reasonable to refuse to investigate when their investigator does not know the relevant facts the investigation will uncover." *Dickerson v. Bagley,* 453 F.3d 690, 696 (6th Cir. 2006). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *Wiggins v. Smith*, 539 U.S. 510, 526 (2003); *Sims v. Livesay,* 970 F.2d 1575, 1580-81 (6th Cir. 1992).

To demonstrate deficient performance or prejudice resulting from a failure to investigate, a petitioner must "make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchinson v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002). "[T]here is no need to show that the evidence that might have been discovered would have been

helpful - only that a proper judgment could not be made without the investigation when failure to investigate is thought to be sufficiently serious." *Poindexter v. Mitchell,* 454 F.3d 564, 588 (6th Cir. 2006) (Boggs, C.J., concurring).

This argument is speculative at best. First, Petitioner has not demonstrated that his trial counsel did not employ the investigative strategies that Petitioner urges should have been undertaken. Second, Petitioner generally states that if his alleged accomplices' backgrounds would have been exposed, the jury would not have found them credible. Through Mr. Williams' and Ms. Kriesel's own testimony, they implicated themselves in the armed robbery, and therefore, the jury was aware that these individuals were not complete innocents. The jury was also aware that they entered into agreements with the prosecution in exchange for their testimony, and the jury still found them credible. Therefore, drudging up Mr. Williams' and Ms. Kriesel's alleged past criminal acts would not have necessarily yielded relevant or material evidence.

Petitioner's ineffective assistance of counsel claim pertaining to hiring a private investigator is also not persuasive. A proper judgment could have been made by the jury without a private investigator looking into the functionality of security camera since there was footage from the camera in evidence. Petitioner's other suggested investigative tasks are vague; he makes no showing of what evidence counsel should have pursued and how such evidence would have been material. Therefore, the Court finds that Petitioner received effective assistance of counsel on this matter. Moreover, the Court finds Petitioner's substantive failure to investigate claim is one which does not warrant habeas review.

### 3. Impeachment Strategy

Petitioner next argues that his attorney was ineffective because he failed to impeach

Wendy Kriesel during his cross-examination with two letters that she allegedly wrote to the Petitioner while he was in jail awaiting trial.

"[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender v. Adams,* 187 F.Supp.2d 852, 870 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub,* 194 F.Supp.2d 629, 651 (E.D. Mich. 2002).

The first letter states:

I Wendy Kriesel made false [accusations] to the police & wish to be arrested and let Dean Gustafson get off w/out a warrant and charges. I would do anything to get Dean Gustafson.

(Pet. Ex. B). The portion of the second letter that Petitioner wanted the jury to hear was as follows:

I need to get out of town because everyone harasses me about this stupid [ ] thing. I tell everyone that they got the wrong people.

*Id.* The Court will not second-guess trial counsel's reasons for not cross-examining Ms. Kriesel on

these two notes, and will, therefore, not grant habeas relief on the ineffective assistance of counsel claim, nor the substantive impeachment claim.[4]

---

[4]The Court observes, however, that the handwriting on both notes appears different. Moreover, depending on how "I would do anything to get Dean Gustafson," is interpreted, the first note could mean she would do anything, including sacrificing her own freedom or lying, to help get the armed robbery charges dropped against Petitioner. It could also mean Ms. Kriesel made these alleged false accusations for revenge purposes. In either case, the substance of the note is questionable. The second note is not necessarily an exculpatory statement regarding Petitioner.

### 4. Failure to Call Expert Witnesses

Petitioner argues he received ineffective assistance of counsel because of his attorney's failure to call unspecified and unnamed expert witnesses to provide procedural testimony about police identification, crime scenes and forensic evidence. He also claims his physician should have been called to testify about Petitioner's injured elbow, to support his claim that he could not have held a gun in the hand of his injured arm or executed a robbery with the injury.

The Sixth Circuit held that under some circumstances, the failure to interview or call a potential defense witness may amount to a violation of a criminal defendant's Sixth Amendment rights. See e.g., *Towns v. Smith,* 395 F.3d 251, 260 (6th Cir. 2005). However, complaints of ineffective assistance of counsel based upon "uncalled witnesses" are not favored in federal habeas corpus review because mere unsupported allegations about what testimony potential witnesses might have given are far too speculative. See *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002).

The Petitioner has not identified or described any witnesses whom he believes defense counsel should have called except to state that he should have had a police identification, crime scene and forensic evidence experts. To present a viable ineffective assistance of counsel claim based upon an alleged failure by counsel to call a witness to testify at trial, Petitioner must make an affirmative showing as to the identity and availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different more favorable result at trial. *Malcum v. Burt,* 276 F.Supp.2d 664, 679 (E.D. Mich. 2003).

There must be some representation in the record or the petition of the contribution a missing witness could have made, to assess, at a minimum, the prejudice prong of *Strickland.*

As for Petitioner's physician giving testimony, Petitioner, along with Ms. Kriesel and Mr. Williams attested to the fact that his elbow was injured on the night of the robbery. Petitioner had the opportunity to testify about the extent of the injury and his limited mobility with that arm and hand before the jury. The fact that Petitioner's doctor did not testify did not deprive Petitioner of the opportunity to present a defense on this issue.

Petitioner failed to demonstrate that his trial attorney's performance was deficient and that his trial was prejudiced by the absence of unnamed and unknown expert witnesses. Petitioner failed to demonstrate he is entitled to habeas review on the substantive issue as well.

### 5. Opening Statement

Petitioner says his attorney was ineffective when he failed to make an opening statement and failed to place objections on the record during the prosecutor's opening statement.

The Sixth Circuit held "[a]n attorney's decision not to make an opening statement 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.'" *Millender v. Adams,* 376 F.3d 530,525 (6th Cir. 2004).

Petitioner has not shown his attorney's decision to not forego an opening statement or decision not to place objections on the record during opposing counsel's opening statement, was anything other than a tactical decision, nor has he demonstrated a reasonable probability that a different outcome would have resulted had defense counsel made an opening statement. Petitioner failed to show his trial counsel was ineffective for not making an opening statement. See *Byrd v. Collins,* 209 F.3d 486, 525-26 (6th Cir. 2000).

### 6. Motion to Dismiss

Petitioner argues his counsel was ineffective because he failed to file a motion to dismiss after it was clear that the police failed to preserve crucial evidence at the crime scene, i.e., finger prints, hair, and DNA evidence.

The record belies the existence of such evidence.

Roger Schultz, a police officer with the Village of Shelby, testified that he was the first to arrive on the scene and that he secured the area. (Tr., dated 9/10/98 at 216). He further stated that Ms. Sayers told him that the robber touched nothing except to grab the money off of the counter. *Id.* at 217. After examining the glass counter-top along with a deputy sheriff from Oceana County, who arrived on the scene, Timothy Priese, no finger prints were found. *Id* at 217-18. Moreover, there was no testimony about any DNA or hair follicles found at the scene. Petitioner failed to demonstrate there was any "crucial evidence" to preserve, and he certainly has not shown that the evidence, if it existed, was exculpatory. Accordingly, trial counsel's failure to file a motion to dismiss based on a theory that potentially exculpatory evidence was not preserved, cannot be deemed ineffective assistance of counsel. Habeas relief is denied.

### 7. Failure to Object to Prosecutorial Misconduct

Petitioner claims he received ineffective assistance of trial counsel due to his failure to object to the numerous instances of prosecutorial misconduct. For reasons set forth *infra*, the Court finds that the prosecutor did not engage in misconduct. Trial counsel's failure to place objections on the record relative to Petitioner's perceived improper actions during trial would not constitute ineffective assistance of counsel. Habeas relief is denied on this claim.

### B. Sentencing Claim

Petitioner claims he is entitled to habeas relief because the trial court imposed an improper sentence. Petitioner says his sentence was mis-scored, is disproportionate and is illegal because offense variable two (OV2), which should have been scored at 0, was erroneously inflated to a score of 25. Claims that arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review unless the petition can show that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law. See *Lucey v. Lavigne,* 185 F.Supp.2d 741, 745 (E.D. Mich. 2001). Petitioner challenges the scoring of his sentencing guidelines under state law. A claim that the state sentencing guidelines were incorrectly scored fails to state a claim upon which federal habeas relief can be granted. See, e.g., *Cook v. Stegall,* 56 F.Supp.2d 788, 797 (E.D. Mich. 1999); see also *Austin v. Jackson,* 213 F.3d 298, 301 (6th Cir. 2000); *McPhail v. Renico,* 412 F.Supp.2d 647, 656 (E.D. Mich. 2006). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. See *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1354 (6th Cir. 1993); *Oviedo v. Jago,* 809 F.2d 326, 328 (6th Cir. 1987). Since there has been no showing that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law, Petitioner is not entitled to habeas relief on this state law sentencing issue.

To the extent Petitioner challenges the proportionality of his sentence, the argument does not furnish a basis for habeas relief. Michigan law says there must exist proportionality between an offense and the sentence. *People v. Milbourn,* 435 Mich. 630, 636; 461 N.W.2d 1 (1990). ("[A] given sentence can be said to constitute an abuse of discretion if that sentence violates that principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the

seriousness of the circumstances surrounding the offense and the offender."). However, the United States Constitution "contains no strict proportionality guarantee," and therefore, a claim that the sentencing court violated Michigan's principles of proportionality is not a cognizable claim under habeas review. *Harmelin v. Michigan,* 501 U.S. 957, 965 (1991).

It is now well settled that the Eighth Amendment "does not require strict proportionality between crime and sentence." *Id.* at 1001; *United States v. Layne,* 324 F.3d 464, 473 (6th Cir. 2003). Instead, the Eighth Amendment simply forbids extreme sentences that are "grossly disproportionate" to the crime committed. *Harmelin v. Michigan,* 501 U.S. at 1001. Because Petitioner was convicted of armed robbery, which is punishable by life imprisonment or any term of years pursuant to Mich. Comp. Laws §750.529, and Petitioner was sentenced to a term of twenty to sixty years for this offense, the sentence he received is in no way "grossly disproportionate" to the crime.

### C. Insufficient Evidence

Petitioner argues that insufficient evidence was presented to sustain his conviction for armed robbery. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979).

"[T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal

citation and footnotes omitted). This "standard must be applied with explicit references to the

substantive elements of the criminal offense as defined by state law." *Id.* at n. 16.

Pursuant to 28 U.S.C. §2254(d)(1), this court must determine whether the state court's

application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court

precedent.

The Michigan Court of Appeals in this case concluded:

> Lastly, defendant argues that insufficient evidence supported his armed robbery and
> felony-fire-arm convictions. We find defendant's argument without merit. Viewed
> in the light most favorable to the prosecutor, the victim's testimony alone
> established all the required elements of defendant's armed robbery and felony-
> firearm convictions. MCL §750.529; MSA 28.797, MCL §750.227b; MSA
> 28.424(2); *People v. Johnson,* 460 Mich. 720, 722-723; 597 N.W.2d 73 (1999) (In
> determining whether the prosecutor presented sufficient evidence to sustain a
> conviction, we must view the evidence in the light most favorable to the prosecutor
> and determine whether a rational trier of fact could have found that the essential
> elements of the crime were proven beyond a reasonable doubt.) See also *People v.
> Carines,* 460 Mich. 750, 757; 597 N.W.2d 130 (1999) (Circumstantial evidence and
> the reasonable inferences arising therefrom can constitute satisfactory proof of the
> elements of a crime.)

*People v. Gustafson,* No 215546, 2000 WL 33421437 at *2.

The Court agrees and finds that there was sufficient evidence to support the verdict: (1) Ms.

Sayers identified Petitioner as the robber; (2) Mr. Williams testified that he was in the get-a-way car,

that Petitioner was wearing a mask upon exiting The Concession Stand, and that Petitioner not only

gave him $200.00 from the proceeds of the robbery, but admitted to Mr. Williams that he "robbed

the place.;" and (3) Ms. Kriesel testified that she was driving the get-a-way car, transported

Petitioner away from The Concession Stand directly after the robbery, and saw Petitioner wearing

a mask and possessing a gun.

Viewing the evidence as a whole in the light most favorable to the prosecution, the Court must conclude that the State presented sufficient evidence from which the fact finder could have concluded beyond a reasonable doubt that the Petitioner committed armed robbery. State law required proof that an assault against the victim occurred before or contemporaneously with the taking of the property. Mich. Comp. Laws §750.529. The victim's testimony furnished adequate proof from which to conclude that at least some money was taken.

"[C]ircumstantial evidence alone is sufficient to sustain a conviction." and the prosecutor is not required to "Remove every hypothesis of guilt." *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir. 1989) (quoting *United States v. Stone,* 748 F.2d 361, 363 (6th Cir. 1984). This Court may not reweigh the evidence or redetermine the credibility of the witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003), quoting *Marshall v. Lonberger,* 459 U.S. 422 (1983). "The mere existence of sufficient evidence to convict therefore defeats [the] petitioner's claim." *Id.* at 788-89.

The evidence presented supports the conclusion that Petitioner committed a robbery while armed with a dangerous weapon. A rational juror would be justified in concluding that Petitioner was guilty of the charged offenses. The Michigan Court of Appeals, although not citing *Jackson,* cited case law which clearly incorporates the *Jackson* standard. Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### D. Prosecutorial Misconduct

Petitioner argues that the prosecutor engaged in misconduct by: (1) improperly vouching for his key witness; (2) knowingly using perjured testimony; (3) appealing to the sympathies of the jury; and (4) allowing Williams and Kriesel to falsely testify that they were not expecting leniency

in exchange for their testimony against Petitioner.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell,* 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation."), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th Cir. 2000). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Anger v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997), quoting *Serra v. Michigan Department of Corrections* 4 F.3d 1348, 1355 (6th Cir. 1993).

When assessing the prosecutor's conduct, the court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit identified four factors to consider when analyzing conduct for flagrancy: "(1) whether the statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were isolated or among a series of improper statements; (3) whether the statements were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams,* 376 F.3d at 528, quoting *Boyle v. Million,* 201 F.3d 711, 717 (6th

Cir. 2000).

## 1. Vouching

"Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States,* 985 F.2d 844, 846 (6th Cir. 1993). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez,* 981 F.2d 867, 871 (6th Cir. 1992), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness' testimony, thereby placing any perceived prestige of the office of the prosecutor, as bolstering the witness's believability. See *United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999). Comments that imply that the prosecutor has special knowledge of facts not before the jury that touch on the credibility and truthfulness of witnesses is improper bolstering. *United States v. Carroll,* 26 F.3d 1380, 1388 (6th Cir. 1994).

A review of the prosecutor's comments concerning his perceived testimony of Ms. Kriesel and Mr. Williams constituted none of this. Rather, the prosecutor was setting up for the jury what he expected the testimony to be from Ms. Kriesel and Mr. Williams. (Tr. dated, 9/10/98, at 112-114). To the extent that any challenged remarks could be viewed as improper, the trial court's instructions cured any potential defect caused by the prosecutor's comments. The Court finds that the prosecutor's remarks did not render the trial fundamentally unfair. Therefore, the Court will deny habeas relief on this aspect of his prosecutorial misconduct claim.

## 2. Perjured Testimony

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a petitioner must show that the statements were actually false,

that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell,* 161

F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement

was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct

or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins,*

209 F.3d 486, 517-18 (6th Cir. 2000). Mere inconsistencies in a witness' testimony do not establish

the knowing use of false testimony by the prosecutor. *Coe v. Bell,* 161 F.3d at 343; *Malcum v. Burt,*

276 F.Supp.2d at 684. Additionally, the fact that a witness contradicts himself or herself or changes

his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F.Supp.2d at 684.

Petitioner asserts that Ms. Kriesel and Mr. Williams' version of events at The Concession

Stand as told to the police during their interviews and as attested to at trial were inconsistent and

therefore, constituted perjured testimony. Specifically, Petitioner points to Mr. Williams' statement

that he was not feeling well on the night of the robbery and was suffering with flu like symptoms.

(Tr. dated 9/10/98 at 267-69, 290-91). Ms. Kriesel testified that she did not recall Mr. Williams

being ill on that evening and that he was fine. (Tr. dated 9/11/98 at 34-35). Further, Petitioner cites

Ms. Kriesel's testimony that Mr. Williams and Petitioner have been friends for twenty years

to dispute Mr. Williams' testimony that he was afraid of Petitioner. *Id.* at 4.

Inconsistencies or contradictions during trial testimony alone are insufficient to rise to the

level of perjury. Moreover, Petitioner has not demonstrated how any inconsistencies with Mr.

Williams' or Ms. Kriesel's testimony are  material to this case, are indisputably false, or that the

prosecutor knew they were false. Simply because Ms. Kriesel did not believe Mr. Williams was ill

on the night of the robbery does not mean "indisputably" that he was not. Moreover, knowing

someone for twenty years does not necessarily mean that Mr. Williams could not have had reason

to be scared of Petitioner at times for one reason or another. Accordingly, the Court does not find

habeas relief is warranted relative to this claim of prosecutorial misconduct.

### 3. Appealing for Sympathy

Petitioner next argues that the prosecution engaged in misconduct by seeking sympathy from

the jury for Ms. Sayers by stating in his closing argument:

> [Y]ou heard the testimony of the 19 year old clerk, Sarah Sayers. She came in and
> told you, ah, what could only be described as I think what you can only describe as
> a terrible traumatic event in her life . . . obviously, that's a horrible traumatic
> moment.
>
> Ah, Roger Schultz said, she was so shaken up we could hardly get a story out of her.
> Something very terrible and traumatic, obviously happened to her.

(Tr. dated 9/11/98 at 93-94). While a prosecutor cannot take actions which are "calculated to incite

the passions and prejudices of the jurors," *United States v. Solivan,* 937 F.2d 1146, 1151 (6th Cir.

1991), a prosecutor may argue from the facts that a witness is (or is not) worthy of belief, see

*Portuondo v. Agard,* 529 U.S. 61, 69 (2000), and may argue inferences from the evidence. See

*Byrd v. Collins,* 209 F.3d at 535. Although the prosecutor's argument could have reflected some

sympathy for Ms. Sayers, the argument was derived from her testimony and the testimony of Roger

Schultz, and was meant to explain that the robbery occurred, the gravity of the crime despite the fact

that no on was injured, and some background to explain discrepancies in her identification

testimony. Even if the argument could be seen as improper, it was not so flagrant as to deny

Petitioner a fair trial. Moreover, Petitioner's claim would also be defeated by the fact that the trial

court instructed the jury that they were not to let sympathy or prejudice influence their decision. See

*Welch v. Burke,* 49 F.Supp.2d 992, 1006 (E.D. Mich. 1999). For these reasons, habeas relief is

denied.

#### 4. Prosecutor's Arrangement with Mr. Williams & Ms. Kriesel

Petitioner argues that neither Mr. Williams, Ms. Kriesel nor the prosecutor was truthful regarding the plea agreements made in exchange for testimony against Petitioner. The record belies Petitioner's argument. The prosecutor revealed during his opening statement and Mr. Williams and Ms. Kriesel testified at trial that they pled guilty to lesser offenses in exchange for testimony against Petitioner. (Tr. dated 9/10/98 at 113-14, 258; Tr. dated 9/11/98 at 12). Petitioner takes issue with the fact that the testimony regarding some of the specifics of the plea arrangement were not consistent, i.e., six months in jail versus probation. Petitioner cites no authority that requires the specifics of a final plea arrangement with witnesses to be presented to the jury. The fact that the jury was fully aware that Mr. Williams and Mr. Kriesel obtained a benefit to testify against Petitioner is sufficient disclosure. Petitioner cannot show that any inconsistency regarding the extent of punishment facing Mr. Williams and Ms. Kriesel was actually false if that was their understanding of the arrangement at that time. Moreover, there is no showing that the prosecutor intended to deceive the jury or that details regarding their punishment are at all material. No habeas relief is granted on this claim.

### E. Sequestration

Petitioner claims the investigating officers, Robert Wilson (Chief of Police for the Village of Shelby) and Dennis Wilson (Detective with the Oceana Sheriff's Department) should have been sequestered so that their testimony would not be tainted by listening to testimony from other law enforcement officials. Defense counsel made a request to the trial court for these officers' sequestration, but the court stated "in light of the fact in discussing this case with you, it sounds like

a critical issue is really identification of who went into the store that day, and I doubt these officers really have anything that they would testify to regarding that issue." (Tr. dated 9/10/98 at 99). With that, the officers were permitted to remain in the courtroom and assist the prosecutor. *Id.* at 100.

A trial court's failure to sequester witnesses does not amount to the deprivation of a constitutional right and therefore cannot form the basis of federal habeas relief. *Mathis v. Wainwright,* 351 F.2d 489, 489 (5th Cir. 1965); *Rock v. Zimmerman,* 543 F.Supp. 179, 183 fn. 4 (M.D. Pa 1982). No habeas relief is warranted.

### F. Cumulative Error

Petitioner claims he is entitled to habeas relief because of the cumulative effect of the alleged errors in the state courts. Because Petitioner's discrete claims lack merit, he cannot establish that habeas relief is warranted based upon a claim of cumulative error. See *Gillard v. Mitchell,* 445 F.3d 883, 898 (6th Cir. 2006). The Sixth Circuit noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Petitioner is not entitled to habeas relief.

### G. Actual Innocence

Petitioner maintains that he did not commit the armed robbery and is actually innocent.

To prevail on a claim of actual innocence, a habeas petitioner generally has "to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial. *Schlup v. Delo,* 513 U.S. 298, 324 (1995); se also *Souter v. Jones,* 395 F.3d 577, 599-600 (6th Cir. 2005). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 590, quoting *Schlup v. Delo,* 513 U.S. at 327. For an actual innocence exception to be credible, such a claim

requires a habeas petitioner to support his or her allegations for constitutional error "with new reliable evidence- whether it be exculpatory, scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup v. Delo,* 513 U.S. at 324; *Souter v. Jones,* 395 F.3d at 590. The Sixth Circuit further noted that "actual innocence means factual innocence, not mere legal insufficiency." *Souter v. Jones,* 395 F.3d at 590, quoting *Bousley v. United States,* 523 U.S. 614, 623 (1998). Finally, the Sixth Circuit in *Souter* recognized the Supreme Court's admonition that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.*

Petitioner failed to meet the criteria for establishing actual innocence. He provided no new evidence in support of his claim that he did not commit the armed robbery. The sum and substance of Petitioner's argument are renewed attacks on the prosecution witnesses' credibility, which is insufficient to establish actual innocence. *In Re Byrd,* 269 F.2d 561, 577 (6th Cir. 2001). Moreover, a petitioner cannot establish actual innocence "merely by rehashing his actual innocence claims raised in the state courts" and relying on the evidence that was presented at trial. See *Lardie v. Birkett,* 221 F.Supp.2d 806, 808 (E.D. Mich. 2002). This is precisely what Petitioner has done in

this case to support his actual innocence claim. The Court does not find it persuasive. Habeas relief is denied.

## IV. CONCLUSION

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.

**IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" [Dkt. #5] is **DENIED**.


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 24, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record and Dean A. Gustafson by electronic means or U.S. Mail on September 24, 2008.

s/Carol A. Pinegar
Deputy Clerk