UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEAN A. GUSTAFSON, #194804,

        Petitioner(s),        CASE NUMBER: 01-73692
                                          HONORABLE VICTORIA A. ROBERTS

v.

SHERRY L. BURT,

        Respondent(s).
_____/

## ORDER DENYING PETITIONER'S MOTION
## TO ALTER OR AMEND JUDGMENT DENYING HABEAS

**I.    INTRODUCTION**

Petitioner was convicted of armed robbery and possession of a firearm during the commission of a felony, Mich. Comp. Laws ("M.C.L.") §§ 750.529, 750.227b. On March 8, 2005, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Dkt. #5). The Court denied the Petition on September 24, 2008 (Dkt. #24).

On October 14, 2008, Petitioner filed a Motion to Alter or Amend Opinion and Order and Judgment Denying Petition for Writ of Habeas Corpus (Dkt. #26). On November 6, the Court denied the motion in part, and ordered the parties to brief the remaining issues (Dkt. #28). The Government filed its response on December 23; Petitioner replied on February 2, 2009.

Petitioner's motion is **DENIED**.

**II.    BACKGROUND**

Petitioner Dean Gustafson and co-defendants Wendy Kriesel and Christopher Williams were charged with the November 1997 robbery of The Concession Stand

market ("TCS") in Shelby, Michigan. Ms. Kriesel and Mr. Williams pleaded guilty, but Petitioner elected to stand trial. On October 19, 1998, he was convicted and sentenced to 20-60 years for armed robbery, and a consecutive two-year term for possession of a firearm while committing a felony.

At trial, co-defendants Kriesel and Williams testified that they were waiting in a parked car outside TCS while Petitioner went into the store. When he returned, he got into the car and told Ms. Kriesel to "Get out of here." Petitioner was wearing a mask and had a gun and some money in his pocket.

The Government introduced a surveillance video from a Wesco gas station located in Rothbury, ten miles from TCS. The video showed Petitioner in the Wesco store on the night of the robbery; Wesco employees also attested to his presence.

The only TCS employee on shift that night was 18-year-old Sarah Sayers. When the police arrived at the scene, Ms. Sayers described the attacker as a man with light brown hair and no facial hair, and she helped produce a composite sketch. Petitioner has dark brown hair and a pronounced mustache, which he wore at the time of the robbery. As he points out, the sketch bears little resemblance to him.

At trial, Ms. Sayers testified that about four months after the robbery, the police showed her a photo array of six potential suspects, five of whom wore mustaches. Petitioner was one of the men in this photo array. Ms. Sayers testified she picked one of the photographs, but did not identify which one. (Tr. 139.)

Ms. Sayers also testified that, after viewing the photo array, she was shown the surveillance video from the Wesco store, as well as still images from the tape. (*Id.* at 137-39.) Ms. Sayers could not say if the man she selected in the photo array was the

same one depicted on the videotape and stills. (*Id.* at 139.) When asked if her identification was at least partly based on the videotape and stills, Ms. Sayers answered "I guess so." (*Id.* at 135.) Upon further prodding, she said she was "pretty positive" that Petitioner looked like the robber, and that her level of certainty was nine out of ten. (*Id.* at 135, 141.)

Petitioner's motion to alter judgment asked the Court to grant an evidentiary hearing on the issue of whether he received effective assistance of trial and appellate counsel. In ordering additional briefing, the Court limited the motion's scope to whether counsel was ineffective for failing to: (1) suppress evidence from the Wesco store in Rothbury; (2) suppress Ms. Sayers's identification testimony; (3) impeach Ms. Kriesel with letters she allegedly sent Petitioner; and (4) impeach Ms. Kriesel's and Mr. Williams's testimonies with their criminal backgrounds.

### III.   STANDARDS OF REVIEW

"Whether a motion to amend should be granted or denied is for the District Court to decide, subject to reversal only for abuse of discretion." *Collins v. Byrd*, 510 U.S. 1185 (1994) (Scalia, J., dissenting) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)) (other citations omitted). *See also Pub. Sch. Teachers Pension & Ret. Fund v. Ford Motor Co.*, 381 F.3d 563, 573 (6th Cir. 2004); *Jones v. Wolfe*, No. 03-10102-BC, 2005 U.S. Dist. LEXIS 34173, at *1-2 (E.D. Mich. Dec. 8, 2005) (unpublished).

#### A.   AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214,

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

As interpreted by the Supreme Court, the term "clearly established federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted). A state-court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). By contrast, "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 413. The fact that a state court erroneously or incorrectly applied clearly established federal law does not, by itself, mandate the issuance of a writ; "[r]ather, that application must also be unreasonable." *Id.* at 411.

**B.    Evidentiary Hearing**

AEDPA and the relevant jurisprudence distinguish between three categories of applicants for evidentiary hearings. First, when a petitioner properly develops the factual basis of a claim in state court, the federal habeas court must --

4

> consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. . . . [I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (footnote and citations omitted); *See also Cornwell v. Bradshaw*, 559 F.3d 398, 412 (6th Cir. 2009). This is commonly referred to as the AEDPA standard.

The second group is composed of applicants who fail to develop the factual basis of their claims in state court. Aside for a few narrow exceptions, federal courts may not grant evidentiary hearings to these petitioners. 28 U.S.C. § 2254(e)(2). The Supreme Court holds this restriction to apply only to petitioners whose failure to develop is the result of omission or neglect:

> [F]ailure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.
> . . .
> Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful.

*Williams v. Taylor*, 529 U.S. 420, 432, 435 (2000).

The last category consists of petitioners who made a "reasonable attempt" to develop the factual basis of their claims, but failed through no fault of their own. In such cases, federal courts apply the pre-AEDPA standard, which requires a hearing "only if (1) the petitioner alleges facts which, if proved, would entitle him to relief and (2) the state courts, for reasons beyond the control of the petitioner, never considered the claim in a full and fair hearing." *Davis v. Lambert*, 388 F.3d 1052, 1061 (7th Cir. 2004) (*citing*

*Townsend v. Sain*, 372 U.S. 293, 312-13 (1963)) (other citations omitted).

The record establishes Petitioner requested several evidentiary hearings on his ineffective assistance claim in state court, but all were denied. Petitioner is not to blame for failing to develop the factual record of his claim, and therefore, the pre-AEDPA standard applies.

### C. Ineffective Assistance of Counsel

The standard for ineffective assistance of counsel claims is the two-prong test formulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed, a petitioner must demonstrate that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Id.* at 687; *Nichols v. United States*, 563 F.3d 240, 248-49 (6th Cir. 2009).

The first element requires showing that "counsel's representation fell below an objective standard of reasonableness," as measured by prevailing professional norms. *Strickland*, 466 U.S. at 688. To satisfy this prong, the petitioner must identify acts or omissions by counsel which, in light of all the circumstances, were "outside the wide range of professionally competent assistance." *Id.* at 690; *Nichols*, 563 F.3d at 249. In reviewing attorney performance, a habeas court must be "highly deferential," *Strickland*, 466 U.S. at 689, and should indulge a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The court should avoid second-guessing an attorney's defense strategy simply because it failed to prevent an adverse decision. *Id.* at 689.

To satisfy the second prong of the *Strickland* analysis, the petitioner must

establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Reasonable probability "does not mean a certainty, or even a preponderant likelihood of a different outcome." *Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003) (citation omitted). However, it must be "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Once again, the reviewing court must guard against speculating as to whether a different trial strategy might have been more successful, and focus instead on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Nichols*, 563 F.3d at 249 (*quoting Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).

**IV.   ANALYSIS**

Petitioner argues an evidentiary hearing is necessary to determine whether his trial attorney rendered ineffective assistance when he failed to (1) suppress the surveillance video and employee testimony from the Wesco store in Rothbury; (2) suppress testimony by Sarah Sayers; (3) impeach Wendy Kriesel's with her letters; and (4) use Ms. Kriesel's and Christopher Williams's criminal histories to impeach them.

   **A.   Failure to Suppress Evidence from Rothbury Wesco Store**

Petitioner contends the videotape evidence and testimony from Wesco employees should not have been admitted because it was more prejudicial than probative. There is no dispute that counsel did not attempt to suppress this evidence at trial; furthermore, counsel was not ineffective in failing to object to the evidence.

Federal habeas courts are precluded from reviewing state-court determinations

on issues of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal appeals court erred in finding that evidence against petitioner was incorrectly admitted under California law); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law") (citations omitted); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (*citing Lewis*). State appellate court decisions are also binding, unless the federal court is convinced that the highest state court would decide the issue differently. *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988) (*quoting Dale Baker Oldsmobile, Inc. v. Fiat Motors of N. Am., Inc.*, 794 F.2d 213, 218 (6th Cir. 1986)).

The only exception to the bar on reviewing state-court decisions is where an error in state procedure or evidentiary law renders the entire proceeding "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.) (*citing Estelle*, 502 U.S. at 69-70), *cert. denied*, 543 U.S. 892 (2004). To determine whether the admission or inadmissibility of evidence denied a defendant's fundamental due process rights, the court should consider the extent to which the evidence is "critical" to the case, whether it "tends to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994) (*quoting Chambers v. Mississippi*, 410 U.S. 284, 297, 302 (1973)).

Petitioner raised this claim in his appeal of right. The court of appeals ruled the evidence relevant and admissible, and concluded that trial counsel was not required to try to suppress it. *People v. Gustafson*, No. 215546, 2000 Mich. App. LEXIS 2370, at *2 (Mich. Ct. App. May 5, 2000). Petitioner does not argue, nor does the Court have any reason to believe, that the Michigan Supreme Court would rule differently.

To the extent that Petitioner argues admitting the evidence deprived him of due process, the Court disagrees. Evidence of Petitioner's proximity to TCS on the night of the robbery was relevant and not unduly prejudicial, and the government was entitled to present its case in the most effective way. *See Old Chief v. United States*, 519 U.S. 172, 186-87 (1997). Thus, the state court's ruling of admissibility was not contrary to, or an unreasonable application of, clearly established federal law.

### B.     Failure to Suppress Identification Testimony

Petitioner contends his lawyer should have tried to suppress Sarah Sayers's identification testimony. Petitioner argues the reason Ms. Sayers recanted her initial description of the attacker was because she was influenced by the photo array, in which five of six men had mustaches, and the Rothbury Wesco surveillance video and stills.

On direct appeal, the Michigan Court of Appeals held that not suppressing Ms. Sayers's testimony was a question of trial strategy which it would not second-guess. *Gustafson*, 2000 Mich. App. LEXIS 2370, at *3. Petitioner argues an evidentiary hearing is necessary to determine whether counsel's failure to suppress was not a tactical decision, but an omission.

The Court disagrees that an evidentiary hearing would shed additional light on Petitioner's claim. There is no question counsel did not attempt to suppress Ms. Sayers's testimony. However, the record is equally clear that he cross-examined Ms. Sayers extensively, emphasizing how she initially described the robber as clean-shaven, and that she helped the police generate a sketch of the attacker which hardly bore any resemblance to Petitioner. (Tr. 135-36.) Under questioning from counsel, Ms. Sayers admitted that, for several months after the attack, she believed the person in the

sketch was the robber, but that her opinion changed after she saw the photo array and the Wesco surveillance video. (*Id.* at 137.)

Whether counsel thought to suppress Ms. Sayers's testimony or not, he clearly recognized its importance, and he used his cross-examination to discredit her. Counsel focused on the inconsistencies in Ms. Sayers's testimony and the contradiction between her initial description of the attacker and Petitioner's appearance. It is plainly evident that counsel's efforts did not achieve the desired result. However, that does not license the Court to question why he did not try to suppress the testimony altogether. The fact that reasonable minds may disagree on the best defense strategy in this case does not mean counsel's representation was constitutionally deficient. *See Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case.").

Petitioner also argues, for the first time, that his counsel was ineffective in failing to cross-examine police witnesses about which man Ms. Sayers identified in the photo array. This claim is likely defaulted, as Petitioner did not raise it either on direct appeal or in his motion for relief from judgment. Instead of applying the procedural default analysis, however, the Court considers the claim's merits. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (judicial economy sometimes dictates resolving a habeas claim on the merits, if the merits can be easily resolved against the petitioner and procedural bar issues are complicated) (*citing* 28 U.S.C. § 2254(b)(2) (habeas petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")); *Bell v. Bell*, 512 F.3d 223, 231 n.3 (6th Cir. 2008) (deciding habeas claim on the merits "with the understanding that [doing so] resolves any issues as to procedural default.").

During cross-examination, Ms. Sayers testified that, before viewing video and stills from the Wesco store, she was shown a photo array with six men:

> Q: And you weren't able to identify anybody at that point, were you.
>
> A: I picked the man on there, yes.
>
> Q: And you don't know who the man was, did you.
>
> A: No, I don't.
>
> Q: And that man wasn't the same one that was in the photograph [from the Wesco surveillance tape]. Was he in the photograph.
>
> A: I don't know.

(Tr. 139.)

Counsel's failure to investigate who Ms. Sayers identified on the photo array did not amount to ineffective assistance. Counsel's questions intended to suggest Ms. Sayers was not sure whether Petitioner was her true attacker, and only identified him after viewing the photo array and surveillance video. Ms. Sayers's testimony clearly reflected her uncertainty as to whether the man she picked on the photo array was the same as on the videotape, but the jury chose to believe her. Counsel could have interrogated police detectives, but if they testified that she picked Petitioner on the photo array, the effect of the cross-examination would be lost, and the jury's doubts about her testimony would evaporate. Thus, the Court cannot state with certainty that failing to press the issue fell below the objective standard of reasonableness.

Moreover, an evidentiary hearing is not necessary to resolve this issue. Even if it were shown that Ms. Sayers chose a different person on the photo array, given the rest of the evidence against Petitioner, particularly testimony by co-defendants, it is unlikely that the outcome of the trial would have been any different.

### C.  Use of criminal records to impeach prosecution witnesses

Petitioner contends his attorney should have investigated the prior criminal histories of Wendy Kriesel and Christopher Williams to impeach their trial testimonies. Petitioner does not specify the nature of Mr. Williams's alleged criminal history, but he claims Ms. Kriesel was convicted for obstructing justice, and was on probation for retail fraud during his trial. According to Petitioner, Ms. Kriesel also accused him of domestic violence once, but she later withdrew her claim. Petitioner alleges the Government initially threatened Ms. Kriesel with a life sentence, but offered a favorable plea deal if she testified against him . He argues an evidentiary hearing is necessary to determine whether counsel's failure to investigate his co-defendants' criminal histories was a tactical decision, or ineffective assistance.

The record is clear that trial counsel did not seek to impeach Petitioner's co-defendants. However, even if failing to do so rendered counsel's overall performance substandard, the error was not prejudicial. As the Court noted in denying habeas, the jury knew quite well that Mr. Williams and Ms. Kriesel were not innocent, because they implicated themselves in their testimonies. The jury was also aware that the plea deals offered to Mr. Williams and Ms. Kriesel were conditioned on their testifying against Petitioner. Even with this knowledge, the jury found Mr. Williams and Ms. Kriesel to be credible witnesses. To suggest things would have been different if counsel had raised their prior criminal histories is simply speculation.

Counsel was not ineffective for failing to impeach Petitioner's co-defendants with their criminal histories.

### D.  Failure to impeach corroborating witness

Petitioner claims that, during his pre-trial detention, Ms. Kriesel sent him letters and cards containing exonerating statements. Petitioner contends his trial counsel was ineffective because he did not cross-examine Ms. Kriesel with these statements.

The first letter Petitioner wanted the jury to hear states: "I Wendy Kriesel made false [accusations] to the police & wish to be arrested & let Dean Gustafson get off w/out a warrant & charges. I would do anything to get Dean Gustafson." (Pet. Ex. B.) The relevant portion of the second letter states: "I need to get out of town because everyone harasses me about this stupid [ ] thing. I tell everyone that they got the wrong people." (*Id.*)

Petitioner claims counsel asked Ms. Kriesel at trial if she had written letters to Petitioner using an alias, but that he did not question her about their substance. Petitioner argues an evidentiary hearing is necessary to ascertain whether this was a tactical choice or an omission on his attorney's part.

In denying habeas, the Court noted the deference generally accorded to trial attorneys where cross-examination and strategy are concerned. However, even if counsel's failure impeach Ms. Kriesel with the letters was the result of incompetence, ineffective assistance arises only if there is reasonable probability that the outcome of the trial would have been different.

The Court has no reason to believe that impeaching Ms. Kriesel with her letters would have led to a different result. First, the handwriting on each note is markedly different, which raises questions about their authenticity and provides a good reason not to bring them up at trial. Both letters are also somewhat ambiguous and open to interpretation, further reducing their probative weight. Lastly, Ms. Kriesel's testimony

13

was corroborated by Christopher Williams. The Court finds it improbable that a jury would believe two vague letters of dubious origin over the testimony of two direct witnesses.

## V.     CONCLUSION

The Court holds that, because Petitioner fails to allege facts which, if proven, would entitle him to relief, no evidentiary hearing is required to resolve his claims. Moreover, Petitioner fails to show that counsel was ineffective in failing to suppress evidence or impeach co-defendant testimonies. Therefore, the Motion to Alter or Amend Opinion and Order and Judgment Denying Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 3, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 3, 2009.

s/Linda Vertriest
Deputy Clerk